

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 18, 2021**

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| REAGOR-DYKES MOTORS, LP,[1] | § | Case No.:  18-50214-RLJ-11 |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | |
| _____ | § | _____ |
| | § | |
| DENNIS FAULKNER, Trustee of | § | |
| Reagor-Dykes Auto Group Creditors | § | |
| Liquidating Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 20-05028 |
| | § | |
| LONE STAR CAR BROKERING, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

[1]  The following chapter 11 cases are jointly administered in Case No. 18-50214: Reagor-Dykes Motors, LP, Reagor-Dykes Imports, LP (Case No. 18-50215), Reagor-Dykes Amarillo, LP (Case No. 18-50216), Reagor-Dykes Auto Company, LP (Case No. 18-50217), Reagor-Dykes Plainview, LP (Case No. 18-50218), Reagor-Dykes Floydada, LP (Case No. 18-50219), Reagor-Dykes Snyder, L.P. (18-50321), Reagor-Dykes III LLC (18-50322), Reagor-Dykes II LLC (18-50323), Reagor Auto Mall, Ltd. (18-50324), and Reagor Auto Mall I LLC (18-50325) (collectively, "Debtors").

1

|  | § | _____ |
|---|---|---|
| DENNIS FAULKNER, Trustee of | § | |
| Reagor-Dykes Auto Group Creditors | § | |
| Liquidating Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 20-05038 |
| | § | |
| EARL OWEN CO., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| _____ | § | _____ |
| | § | |
| DENNIS FAULKNER, Trustee of | § | |
| Reagor-Dykes Auto Group Creditors | § | |
| Liquidating Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 20-05044 |
| | § | |
| MEYER DISTRIBUTING, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Plaintiff Dennis Faulkner ("Trustee"), Trustee of the Reagor-Dykes Auto Group

Creditors Liquidating Trust that was established under the confirmed plan of the jointly

administered Reagor-Dykes bankruptcy cases, filed separate actions against the three named

defendants—Lone Star Car Brokering, LLC (Lone Star), Earl Owen Co. (Earl Owen), and Meyer

Distributing, Inc. (Meyer Distributing).  These are similar-type actions; the same attorney

represents each defendant.  The defendants seek dismissal of the respective suits under Rule

12(b)(6) of the Federal Rules of Civil Procedure.[2]

---

[2] The defendants also sought dismissal under Rule 12(b)(1) but withdrew such request.

I.

Each complaint contains a near identical recitation of facts, or "Background," that generally discusses the time that each debtor entity filed for bankruptcy, the overall structure of the Reagor-Dykes auto business, the events that pushed the first set of Reagor-Dykes entities to file bankruptcy, the events after the first set of debtors filed bankruptcy that forced the second group of Reagor-Dykes entities to file for bankruptcy, a general recitation of all the Reagor-Dykes entities' insolvency, and an overview of the fraudulent schemes that the debtors' CFO Shane Smith employed.[3] The three complaints contain similar sections titled "Debtors' Relationship with the Defendant." These sections each allege that the defendant was "a vendor of one or more of the Debtors." ¶ 30 [quote is same in every complaint at ¶ 30]. The complaints state that one or more of the Debtors "transferred funds, property, or its interest in property, to or for the benefit of the Defendant by checks, cashier checks, wire transfers, or other equivalent" and then direct the reader to a list of the alleged transfers identified in Exhibit A. ¶ 31. The Trustee does not state the method used for the particular transfers listed in Exhibit A. The next paragraph recites three generic scenarios explaining how the alleged transfers are property of the Debtors. ¶ 32. The Trustee does not indicate which of the three scenarios applies to the transfers at issue for each complaint. The paragraphs that follow track the Code's statutory language for each alleged cause of action. ¶¶ 33–40.

---

[3] The complaints define selling vehicles "out of trust" by "re-flooring" or "fake flooring" or "dummy flooring" and "double flooring," alleging that each of these fraudulent practices were used at the Reagor-Dykes dealerships. The complaints further allege that Smith engaged in a fraudulent check-kiting scheme to cover-up these fraudulent flooring practices. ¶¶ 20–24.

II.

Rule 12(b)(6) allows dismissal of a case if a plaintiff fails "to state a claim upon which relief can be granted."[4] This rule applies in adversary proceedings as incorporated by Bankruptcy Rule 7012(b).[5] Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly*'s] plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). "Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted." *Ins. Distrib. Consulting, LLC v. Freedom Equity Grp., LLC*, No. 20-cv-00096, 2020 WL 5803249, at *2 (S.D. Tex. Sept. 4, 2020) (citing

---

[4] "Rule" refers to a rule of the Federal Rules of Civil Procedure.
[5] "Bankruptcy Rule" refers to a rule of the Federal Rules of Bankruptcy Procedure.

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). In ruling on such a motion, the court looks at the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The court may, however, consider documents attached to the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.

### A.

### Adversary No. 20-05028, *Faulkner v. Lone Star Brokering, LLC*

#### 1. Introduction

The Trustee seeks to recover payments made to Lone Star as either preferential or fraudulent and seeks disallowance of Lone Star's claims. The complaint alleges that "One or more of the Debtors contracted with the Defendant for vehicle transport services on credit." Lone Star ECF No. 1 ¶ 30.[6] Exhibit A attached to the complaint lists four specific transactions, all from Reagor-Dykes Motors, LP, along with the date of the transfer, the number, the amount, and the "clear" date.[7] The total amount of the alleged transfers is $33,225.00. The Trustee seeks avoidance of these four transfers under §§ 547, 548, and 549.[8] Lone Star argues that the complaint must be dismissed for failure to state a claim under Rule 12(b)(6).

---

[6] "Lone Star ECF No." refers to a docket entry in Adversary No. 20-05028.

[7] Although not stated in the complaint, it appears checks were used to transfer funds since there is a "clear" date listed in the exhibit. It is unclear what the "number" represents for the alleged transfers.

[8] All § references refer to 11 U.S.C. unless otherwise stated.

2. Avoidance of Preferential Transfers under § 547

Lone Star asks the Court to dismiss the Trustee's preferential transfer claim for three reasons.[9] First, Lone Star argues that the recently added language to § 547(b)—that an avoidance action must be "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)"—is an element of § 547(b) that the Trustee has not adequately pleaded. Second, Lone Star argues that the Trustee fails to allege that the transfers were of an interest of the Debtor in property. And third, Lone Star says the complaint fails to sufficiently allege the transfers were for or on account of an antecedent debt.

The language added to § 547(b) under the Small Business Reorganization Act of 2019 is meant to deter the filing of abusive preferential transfer suits. Whether the due diligence language creates an additional *pleading* requirement is unclear. But a trustee (or debtor-in-possession) must, in bringing a preference action, exercise due diligence and consider the party's "known or reasonably knowable affirmative defenses under subsection (c)." § 547(b). Whether, as here, the trustee's due diligence is sufficient depends on the circumstances of the case. Assessing a trustee's due-diligence efforts at the motion-to-dismiss stage is difficult. A recital by a *litigation trustee* that he exercised sufficient diligence, thus mimicking the language of the statute, is not helpful. One court has said that the language requires that the trustee exercise some judgment before rotely filing a preference suit. *Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC)*, No. 18-32414, 2020 WL 7501938, at *7 (Bankr. S.D. Tex. Dec. 21, 2020). There,

---

[9] Lone Star also asks the Court to dismiss the preference claim to the extent that interests of property of a Debtor other than Reagor-Dykes Motors, LP was transferred because the complaint does not "foreclose that the transfer was made during the 90-day period prior to the bankruptcy proceeding." Lone Star ECF No. 9-1 at 9. The meaning of this statement by Lone Star is unclear. The complaint does not allege transfers from any Debtor other than Reagor-Dykes Motors, LP.

the defendant argued that the plaintiff-trustee's preference claim had to be dismissed because the complaint failed to demonstrate due diligence before filing the complaint. The court rejected this argument because the trustee had "mapped out the alleged structure of the parties' relationships in the Complaint," and the allegations demonstrated that the trustee had reviewed the debtor's bank and wire records, invoices relating to the alleged transfer, correspondence, and the relevant contract. *Id.* The court concluded that the trustee exercised reasonable due diligence.

As to Lone Star, the complaint here asserts minimal factual allegations about the relationship between the Debtors and the defendant as well as the circumstances surrounding the transfers. At this stage, allegations—or lack thereof—do not reflect an abusive filing. Lone Star has not answered the suit; its affirmative defenses are unknown.

Next, Lone Star states that the Trustee fails to identify the specific Debtor that owned the property that was transferred. The complaint, through the information incorporated through its attached exhibit, alleges that Reagor-Dykes Motors, LP made the transfers. The Court can reasonably infer that the transfers were made from Reagor-Dykes Motors, LP's account. The cases cited by Lone Star asserting that the complaint must state which debtor had an interest in the property that was transferred concern facts where the source of the transferred funds is unclear. In *Angell v. Burrell (In re Caremerica, Inc.)*, the court dismissed the trustee's preference claim because there was insufficient information to identify the transferor. 409 B.R. 759 (Bankr. E.D.N.C. 2009). The problem there was the commonality of the name "The Meadows" as part of the name of multiple debtor entities and multiple related non-debtor entities. The complaint only identified "The Meadows" as the account from which the alleged preferential transfers originated. The court was therefore unable to distinguish not only which debtor made the alleged transfers but also whether it was even a debtor that transferred the funds.

Lone Star also cites to *Feltman v. KeyBank, N.A. (In re Levitt & Sons, LLC)*, a case where the trustee sought to avoid and recover loan payments made by various debtor entities to the defendant-bank as preferential and fraudulent transfers.  No. 09-2273, 2010 WL 9499075 (Bankr. S.D. Fla. May 6, 2010).  The court dismissed the claims because the trustee did not allege the total loan amounts, the nature of the underlying obligations, which entities in the multi-debtor case were obligated on the loans, or which entities were the source of the funds allegedly paid to the defendant.  In a later clarifying order, the court stated that the downfall of the complaint was its failure to identify which entities were the source of the funds paid to the defendant.  *Id*. at *2.  The complaint here states that Reagor-Dykes Motors, LP was the source of the funds.

Lone Star argues that fraudulently obtained property deprives a debtor of an equitable interest in that property, and without an equitable interest, the transfers of such fraudulently obtained funds cannot be subject of a preferential transfer as it is not really the debtor's property.  Funds obtained by fraud, though, are still subject to preference claims.  *In re ATP Oil & Gas, Corp.*, 540 B.R. 294, 304–05 (Bankr. S.D. Tex. 2015).

The Trustee has sufficiently alleged an antecedent debt of the Debtor.  The complaint contains a description of the relationship between the Debtors and Lone Star—transport services on credit—and details of the specific transactions and is thus sufficient at this stage.  *See In re CRC Parent Corp.*, No. 12-5070, 2013 WL 781603, at *3–4 (Bankr. D. Del. Mar. 1, 2013) (finding trustee's complaint sufficient where there were allegations that, prior to the petition, the defendant provided pharmaceutical supplies to the debtor or debtors listed in an attached exhibit and the attached exhibit identified only transfers from one debtor as alleged preferences).  The

allegations of the specific relationship between the Debtors and the defendant, as well as the

attached exhibit, sufficiently state the antecedent-debt element.

3. Avoidance of Fraudulent Transfers under § 548

The Trustee seeks avoidance of the same four transfers as actual and constructive

fraudulent transfers under § 548. The Trustee, by his response, has agreed to drop the actual

fraudulent transfer claim. As for the constructive fraudulent transfer claim, the complaint fails to

sufficiently allege that the Debtors received less than reasonably equivalent value in exchange

for the transfers. The Court will elaborate.

To sufficiently plead a constructive fraudulent transfer under § 548, the complaint must

plausibly allege that the debtor received less than reasonably equivalent value. *In re Crescent

Resources* dealt with this issue under similar facts, and the court dismissed the trustee's

fraudulent transfer claim for failure to support its allegation that the debtors received less than

reasonably equivalent value in exchange for the alleged transfers. *Bensimon v. Nexen Pruet,

LLC (In re Crescent Res., LLC)*, No. 11-01082, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan.

23, 2013). The complaint in that case included an attached exhibit that detailed each alleged

transfer by including the invoice date, invoice amount, invoice number and payment date and/or

bank clear date, payment amount, and check or wire number. Besides the identification of the

alleged transfers, the complaint simply stated, "The Debtor or Debtors identified on Exhibit B

received less than reasonably equivalent value in exchange for the Transfer(s)." *Id.*

Like *Crescent Resources*, the complaint here has an attached exhibit that details the

alleged transfers, but without any information related to any invoices, and contains one sentence

regarding reasonably equivalent value—"The Debtors received less than reasonably equivalent

value in exchange for the Fraudulent Transfers." Lone Star ECF No. 1 ¶ 62. There are no

factual allegations to support this conclusory statement. Under Rule 8, conclusory statements are

insufficient to withstand a motion to dismiss. A complaint that only states that the debtor received less than reasonably equivalent value does not meet the pleading standard of Rule 8. *See In re Garcia*, 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) (dismissing constructive fraudulent transfer where the complaint did not allege the value of the exchanged goods or services but only stated that the debtor did not receive reasonably equivalent value).

### 4. Recovery of Post-Petition Transfers under § 549

Lone Star asks that the Court dismiss the Trustee's claim for recovery of post-petition transfers under § 549 for failure to allege any transfers that occurred after the petition date. Reagor-Dykes Motors, LP filed bankruptcy on August 1, 2018. The last alleged transfer did not "clear" until August 1, 2018. Several courts in the Fifth Circuit have determined that the date a check clears is the date that a transfer occurs. *In re Contractor Tech., Ltd.*, 343 B.R. 573, 577–79 (Bankr. S.D. Tex. 2006) (applying *Barnhill v. Johnson*, 503 U.S. 393, 400 (1992) to § 549 where a transfer occurs when a check is cashed); *In re Webb*, 432 B.R. 234, 237 (Bankr. N.D. Miss. 2010). Because the check cleared the day of the petition, it is plausible that the last alleged transfer was completed post-petition and is subject to recovery under § 549. The Court denies Lone Star's motion to dismiss as to this claim.

### 5. Recovery under § 550 and Disallowance under § 502(d)

Lone Star seeks dismissal of the Trustee's claims under § 550 for recovery of the payments and § 502(d) for disallowance of Lone Star's claims until recovery is complete. Lone Star bases its argument for dismissal of these claims on the premise that the Trustee does not have a viable claim for avoidance of the four alleged transfers under §§ 547, 548, or 549. As the Court denies Lone Star's motion to dismiss the Trustee's claims under §§ 547 and 549, the Trustee has alleged a viable avoidance action against Lone Star that allows the Trustee's claims

under §§ 550 and 502(d) to survive.  The Court denies Lone Star's motion to dismiss the Trustee's claims under §§ 550 and 502.

6.   Conclusion

The Court denies Lone Star's motion for dismissal of the Trustee's claims of preferential transfer under § 547, for recovery of post-petition transfer under § 549, for recovery of avoided transfers under § 550, and for disallowance of claims under § 502.  But the Trustee's fraudulent transfer claim under § 548 is not adequately pleaded and, unless adequately amended, is subject to dismissal.

B.

Adversary No. 20-05038, *Faulkner v. Earl Owen Co.*, and
Adversary No. 20-05044, *Faulkner v. Meyer Distributing, Inc.*

1.   Introduction

The Trustee's complaints against Earl Owen and Meyer Distributing are identical, save for the attached exhibit that lists the subject transfers; the name of the applicable defendant; the total amount sought to be avoided; and each defendant's state of incorporation, business address, and registered agent.[10]  The same causes of action are alleged, the defendants' motions to dismiss are identical, and the Trustee filed identical responses.  The Court addresses these two actions together.

2.   Avoidance of Preferential Transfers under § 547

The Trustee has failed to adequately plead a claim for preferential transfers under § 547. The complaints against Earl Owen and Meyer Distributing both fail to provide any information

---

[10] In the Earl Owen complaint, the Trustee appears to have, mistakenly, included in the first sentence of the complaint that the title of the complaint is "Complaint to Avoid and Recover Preferential Transfers and Fraudulent Conveyances Pursuant to 11 U.S.C. §§ 547 and 550, and to Disallow Claims of Defendant Pursuant to 11 U.S.C. § 502(d)" where there are no allegations of fraudulent conveyances.  The Meyer Distribution complaint does not mention "Fraudulent Conveyances."

beyond conclusory allegations that the Trustee performed reasonable due diligence under the circumstances and that the transfers were for antecedent debt.

The alleged transfers that Reagor-Dykes Motors, LP made to Earl Owen and Meyer Distributing are described on the attached exhibit to each complaint.  The exhibit includes the date each transfer was initiated, the "number," the amount of each transfer, and the date each transfer was completed ("Clear Date").  There are no allegations of the kind of services that Earl Owen or Meyer Distributing provided to any of the Debtors—only that the defendant was a "vendor."  The complaints sufficiently identify the transfers sought to be avoided, but the information is identical to that contained in Reagor-Dykes Motors, LP's statement of financial affairs filed in the main bankruptcy case.  The transfers lack context—what kind of services or goods did either Earl Owen or Meyer Distributing provide?  How were these business relationships structured?  It appears the Trustee considered only what was reflected on a bank statement.  Were these transfers on account of ordinary business practices, simultaneous value, a cash on delivery agreement, or was new value provided for these transfers?  None of those questions can be answered with any certainty since there is no information in the complaints about the nature of these transfers.  The lack of context is troublesome since the amendment to § 547(b) to include reasonable due diligence was meant "to curb perceived abuses by trustees of their ability to avoid and recover preferential transfers."  Andrew J. Cloutier, et al., *Your Debtor Giveth, Its Trustee Taketh Away: Avoidance Actions in Bankruptcy Cases*, 2020 No. 2 RMMLF-INST 10, 10-15 n.63 (2020).  While the Court need not decide if "reasonable due diligence" is an element of preferential transfers at this time since the claims fail on another ground, it is clear that if any due diligence was performed on these actions, such due diligence is not reflected in the pleadings.

The other problem is that the Trustee's preferential transfer actions against Earl Owen and Meyer Distributing under § 547 do not adequately plead antecedent debt. Each complaint merely states that each defendant "is a vendor of one or more of the Debtors" and that "[o]ne or more of the Debtors contracted with the Defendant as a trade vendor or supplier for the Debtors' business operations." ¶ 30. The only sentence in each complaint that relates to antecedent debt is in each complaint's paragraph 34, which states "Each Transfer was made for or on account of an antecedent debt owed by the Debtors to the Defendant." This is a conclusory statement that parrots the statute. The complaint contains no other facts that support this statement. Conclusory statements that merely recite the elements of a cause of action are inadequate under federal pleading standards. And a preference action under § 547 should be dismissed for failure to adequately state a cause of action under Rule 12(b)(6) where the complaint does not include any details about the antecedent debt or describe what goods or services were exchanged. *See Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 177 (Bankr. D. Del. 2020) ("The only factual allegations in the Complaint are that Defendant was a vendor or creditor of Debtors, and the Transfers were made on account of Debtor's purchase of products or services from Defendant. Neither of these statements identify an antecedent debt."); *In re Quantum Foods, LLC*, 558 B.R. 111 (Bankr. D. Del. 2016) (dismissing preference action where complaint recited elements of the causes of action and had an attached exhibit that identified the transfers, but the complaint and the exhibit did not provide any details about the antecedent debt that the transfers satisfied, such as the relationship between the parties, the identity of any contracts or agreements between the parties, or any description of the goods or services exchanged); *In re Harris Agency, LLC*, 465 B.R. 410 (Bankr. E.D. Pa. 2011) (finding that an adversary complaint that fails to provide specifics regarding the alleged antecedent debt owed by

the debtor does not adequately plead a preferential transfer claim); *In re Caremerica, Inc.*, 409 B.R. at 751 (dismissing preference action where bankruptcy trustee did not assert the nature and amount of the antecedent debt and the complaint only made the conclusory assertion that each preferential transfer was made "for, or on account of, an antecedent debt owed by the Transferor to the Defendant before the transfer was made" and failed to assert facts supporting the existence of an antecedent debt owed by the debtors to the defendants). The Trustee's preference actions fail to adequately plead antecedent debt.

     3.   Recovery under § 550 and Disallowance under § 502

The Trustee's causes of action against Earl Owen and Meyer Distributing for recovery under § 550 and disallowance of claims under § 502(d) depend upon viable avoidance claims; if such claims are dismissed, so too must these remaining causes.

IV.

The Court denies Lone Star's motion to dismiss the Trustee's causes of action under §§ 547, 549, 550, and 502. The Trustee's claim against Lone Star under § 548 will, unless adequately amended, be dismissed. The Trustee's complaints against Earl Owen and Meyer Distributing do not adequately plead a preference action against either defendant, and the other causes of action of each complaint depend upon a viable preference action. The Court will allow the Trustee leave to amend the complaints against Lone Star, Earl Owen, and Meyer Distributing. Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981).

The Trustee will have twenty days from entry of the orders issued on this memorandum opinion to amend the complaints.  Any complaint (or particular cause of action) not amended as required will be dismissed.

### End of Memorandum Opinion ###